**IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA**

| In re: Bamberg County Memorial Hospital, Debtor. | Case No. Chapter 9 |
|---|---|

**MEMORANDUM IN SUPPORT OF STATEMENT OF QUALIFICATIONS UNDER 11 U.S.C. § 109(c)**

Bamberg County Memorial Hospital (the "Debtor") submits the following Memorandum in Support of its Statement of Qualifications Under 11 U.S.C. § 109(c).[1]

## I. BACKGROUND

### A. History of the Debtor.

The Debtor has filed a petition seeking relief under chapter 9 of the United States Bankruptcy Code ("Bankruptcy Code"). The Debtor was created in 1949 by act of the South Carolina Legislature to provide hospital facilities to the residents of Bamberg County (the "County"). 1949 S.C. Acts 398.[2] The legislature observed the principal purpose of the Act was to create a hospital for the residents of Bamberg County. *Id.* § 7. The legislature created the Bamberg County Hospital Board (the "Board") and charged it with the responsibility constructing a hospital and making all rules and regulations for the operations and management of the Debtor. *Id.* §§ 8, 11. Thereafter, the General Assembly enacted the Home Rule Act of 1975, which prohibited the General Assembly from passing bills related to a single political subdivision:

---

[1] This Memorandum is further supported by the Declaration of Danette F. McAlhaney of the Debtor filed on even date herewith.

[2] A copy of this Act is attached hereto as Exhibit 1.

> As ratified, new Article VIII directed the General Assembly to implement what was popularly referred to as "home rule" by establishing the structure, organization, powers, duties, functions, and responsibilities of local governments by general law. 3 S.C. Const. art. VIII, §§ 7. In addition, new Article VIII mandated a liberal rule of construction regarding any constitutional provisions or laws concerning local government. S.C. Const. art. VIII, § 17. Although the General Assembly was required to implement home rule, new Article VIII essentially left it up to the General Assembly to decide what powers local governments should have. Acting under this authority, the General Assembly enacted various statutes regarding the powers of counties and municipalities.

*Hospitality Ass'n of South Carolina v. County of Charleston*, 320 S.C. 219, 464 S.E.2d 113 (1995). Before "home rule," counties were governed by bills passed by the General Assembly. After "home rule," the counties were given certain authority to exercise certain powers. For example, S.C. Code Ann. § 4-9-25, which was enacted by the General Assembly in 1989, states in part as follows:

> All counties of the State . . . have authority to enact regulations, resolutions, and ordinances . . . , including the exercise of these powers in relation to health and order in counties or respecting any subject as appears to them necessary and proper for the security, general welfare, and convenience of counties or for preserving health, peace, order, and good government in them.

Accordingly, after "home rule" was enacted, by Ordinance No. 1-85-2 adopted March 4, 1985, the County declared that the Board should consist of 10 members, and provided the Board with the authority and responsibility to make all rules and regulations for the operation and management of the Debtor. Appointments on the Board are made by Bamberg County Council, with seven individual representatives being recommended by the Board and the three at large representatives being recommended by the Bamberg County Medical Association. Once approved, a nominee is certified to the Governor of South Carolina.

Debtor operates as a hospital located in the city of Bamberg, SC on 509 North Street a short distance from US Highway 301. Debtor is licensed for 59 beds but currently operates 25 beds with both private and semi-private rooms. The average daily census of Debtor is 14

patients. Debtor was constructed in 1952 and had 32 beds. Over the years beds and services were added with the final addition bringing the total to 59 beds in 1982. In 2009, Debtor's building was renovated. The hospital has 1 operating room, 2 endoscopy rooms, and 1 procedure room along with 2 LDR rooms located in close proximity to the operating suite. The property on which the facilities exist and the physical facilities are owned by the County.

The Debtor provides general medical and surgical care in inpatient, outpatient, and emergency room service areas. The Debtor has 11 physicians on active medical staff and 9 are Board Certified.

**B. Financial Issues facing the Debtor.**

The Debtor has been operating at a loss. The monthly net revenue for March, 2011 was $929,580. This was $720,944 less than Debtor budgeted and $567,603 less than February, 2011 net revenue. Year-to-date, for the six months ending March, 2011, net revenue was $7,654,007. This level of revenue is $2,249,139 less than the budget of $9,903,146 and $2,658,675 less than the same period of time last year. Accordingly, year to date, for the six months ending March, 2011, Debtor has operated at a loss of $1,525,197.

The Debtor has been able to stay in business only because the County has provided funding to the Debtor. The Debtor has been informed by the County that the County does not have the ability or intent to continue funding the operating losses of the Debtor in the future. Even with the County providing supplemental funding, the Debtor has struggled to pay its debts in the ordinary course of business. Accordingly, without the County's funding and based upon its historical operating losses, the Debtor believes it will be unable to pay its bills in the future as they become due.

On or about May 20, 2011, the South Carolina Department of Revenue served a notice of levy on SC Bank & Trust to seize the bank accounts of the Debtor which resulted in a freeze of approximately $205,000.00. As a result of the account freeze on these funds, Debtor's ability to operate has been significantly impaired and necessitated the expedited filing of the Debtor's chapter 9 petition.

On June 20, 2011, the Debtor filed its chapter 9 petition at the direction of the Board. In connection with its petition, the Debtor filed its Statement of Qualifications Under 11 U.S.C. § 109(c), whereby it certified that the Debtor satisfied each of the five requirements proscribed in Section 109(c). As is discussed in more detail below, the Debtor is eligible to be a debtor in a chapter 9 case.

## II. ARGUMENT

### A. The Bamberg County Memorial Hospital is an Eligible Debtor under Chapter 9.

Section 109(c) of the Bankruptcy Code sets forth the statutory criteria for eligibility as a chapter 9 debtor. The debtor must be (1) a municipality; (2) specifically authorized to be a chapter 9 debtor; (3) insolvent; (4) willing to effect a plan to adjust its debts; and (5) must also meet one of the following four requirements: (i) the debtor has obtained the agreement of creditors holding at least a majority in the amount of claims of each class that the debtor intends to impair through its plan; (ii) the debtor has negotiated in good faith, but failed to obtain the agreement of creditors holding at least a majority in the amount of claims of each class that the debtor intends to impair under its plan; (iii) the debtor is unable to negotiate with its creditors because such efforts are impracticable; or (iv) the debtor must reasonably believe that a creditor may attempt to obtain a preference. 11 U.S.C. § 109(c).

These requirements are to be construed broadly to provide relief to further the

Bankruptcy Code's underlying policies. *See In re Sullivan County Reg'l Refuse Disposal Dist.,* 165 B.R. 60, 73 (Bankr. D.N.H. 1994). The Debtor has the burden to establish its eligibility under Section 109(c). *Hamilton Creek Metro. Dist. v. Bondholders Colo. Bondshares (In re Hamilton Creek Metro. Dist.),* 143 F.3d 1381, 1385 (10th Cir. 1998); *In re Slocum Lake Drainage Dist. of Lake County,* 336 B.R. 387, 390 (Bankr. N.D. Ill 2006). As is detailed below, the Debtor satisfies each of the requirements of Section 109(c), and therefore is eligible to be a debtor under chapter 9.

**1. The Debtor is a Municipality.**

Section 109(c)(1) requires that the debtor filing a petition under chapter 9 must be a municipality. A "municipality" is defined in section 101 of the Bankruptcy Code to mean "political subdivision or public agency or instrumentality of a State." 11 U.S.C. § 101(40). While the Code does not define the terms "public agency, or instrumentality of a State," a legal test to determine public agency status was established in *Ex parte York County Natural Gas Authority*, 238 F. Supp. 964, 976 (W.D. S.C. 1965), *modified on other grounds,*, 362 F.2d 78 (4th Cir. 1965), *cert. denied*, 383 U.S. 970 (1966), stating "the legal test between a private or public authority or agency is whether the authority or agency is subject to control by public authority, state or municipal." *Id.* (holding a gas authority with the power to issue revenue bonds was a "municipality" for purposes of Chapter 9); *see also In re Connector 2000 Ass'n,* 447 B.R. 752 (Bankr. D.S.C. 2011) (finding South Carolina nonprofit corporation organized as a "public benefit" corporation to operate a toll qualified as municipality using the *York County* public agency test). Using this public agency test in *York County*, the court in *In re Greene County Hospital*, 59 B.R. 388, 389-90 (S.D. Miss. 1986), determined that because the hospital was subject to control by a county board of supervisors, it qualified as a public agency and thus met

the statutory requirement for "municipality" status. *See also In re Westport Transit District*, 165 B.R. 93 (Bankr. D. Conn 1994) (relying on public agency test set forth in *York County*, the court found the debtor transit district which provided public transportation services, could issue bonds, and had the power of eminent domain was a "municipality").

In this case, the Debtor is a public agency, and thus a "municipality" as defined in section 101 (40) of the Bankruptcy Code. The Debtor was created by statute in the public interest and is supported in part by public funding through the County providing it funds. Furthermore, vacancies on the Board must be approved by County Council. Applying the public agency test set forth in *York County,* Debtor is a public agency and thus meets the statutory requirement for "municipality" status. *See Greene County Hospital*, 59 B.R. 388, 389-90 (S.D. Miss. 1986) (hospital a "municipality" because the hospital was subject to control by a county board of supervisors); *see also Hospitality Ass'n of South Carolina v. County of Charleston*, 320 S.C. 219, 464 S.E.2d 113 (1995) (finding hospital was a public corporation and instrumentality of the state for purposes of qualifying under § 1983 where the hospital that was created by statute in the public interest, supported in part by public funding, and the board members were approved by County Council); *Sloan v. Greenville Hosp. Sys*., 388 S.C. 152 (S.C. 2010) (holding the hospital was not a state "governmental body"[3] subject to the procurement procedures detailed in the state's Procurement Code; rather, it was a "political subdivision,"[4] and more particularly a "special purpose district" and by law was required to, establish its own provisions embodying sound principles of appropriately competitive procurement).

Accordingly, the Debtor is a public agency or instrumentality of the State of South

[3] The Procurement Code defines Governmental Body as "a state government department, commission, council, board, bureau, committee, institution, college, university, technical school, agency, government corporation, or other establishment or official of the executive or judicial branch." S.C. Code Ann. § 11-35-310(18).

[4] The Procurement Code defines Political subdivision" as "all counties, municipalities, school districts, public service or special purpose districts." Id. § 11-35-310(23). Political subdivisions are excluded from the definition of a governmental body and are not subject to the procurement procedures outlined in the Procurement Code.

Carolina and is a municipality within the meaning of Section 109(c)(1).

**2. Debtor is Specifically Authorized Under South Carolina Law to Bring Its Petition.**

Section 109(c)(2) requires that a municipality be "specifically authorized, in its capacity as a municipality or by name, to be a debtor under such chapter by State law, or by a governmental officer or organization empowered by State law to authorize such entity to be a debtor under such chapter." 11 U.S.C. § 109(c)(2).

South Carolina has adopted measures which expressly enable municipalities to file bankruptcy under federal law, without further restriction. S.C. Code Ann. § 6-1-10 provides:

> Power of political subdivisions to proceed under legislation dealing with bankruptcy or composition of indebtedness.
>
> The consent of the State is hereby granted to, and all appropriate powers are hereby conferred upon, any county, municipal corporation, township, school district, drainage district or other taxing or governmental unit organized under the laws of the State to institute any appropriate action and in any other respect to proceed under and take advantage of and avail itself of the benefits and privileges conferred, and to accept the burdens and obligations created, by any existing act of the Congress of the United States and any future enactment of the Congress of the United States relating to bankruptcy or the composition of indebtedness on the part of the counties, municipal corporations, townships, school districts, drainage districts and other taxing or governmental units or any of them.

This statute is applicable to the Debtor as the Debtor is a "governmental unit." While the term "governmental unit," is not defined in Title 6 of the South Carolina Code[5] or by case law, under

[5] "Governmental Unit" is defined in other titles of the South Carolina Code. S.C. Code Ann. § 13-1-45, which relates to the Department of Commerce's South Carolina Water and Wastewater Infrastructure Fund, defines "Government unit" as "a municipal corporation, county, special purpose district, special service district, commissioners of public works, or another public body, instrumentality or agency of this State including combinations of two or more of these entities acting jointly to construct, own, or operate a qualified project, and any other state or local authority, board, commission, agency, department, or other political subdivision created by the General Assembly or pursuant to the Constitution and laws of this State which may construct, own, or operate a qualified project." S.C. Code Ann. § 34-26-110, which relates to the South Carolina Credit Union Act, defines "Governmental unit" as "any board, agency, department, authority, instrumentality, or other unit or organizations of the federal, state, county, or municipal level of government." S.C. Code Ann. § 36-9-102, which relates to Secured Transactions, defines "Governmental unit" as "a subdivision, agency, department, county, parish, municipality, or other unit of the government of the United States, a state, or a foreign country. The term includes an organization having a separate corporate existence if the organization is eligible to issue debt on which interest is exempt from

the Bankruptcy Code, "governmental unit" is defined to include a "municipality" and an "instrumentality of a … State." 11 U.S.C. § 101(27). Accordingly, because the Debtor is a municipality under 11 U.S.C. § 101(40) and for purposes of 11 U.S.C § 109 as detailed above, the Debtor is a "governmental unit" for purposes of S.C. Code Ann. § 6-1-10. *In re Connector 2000 Ass'n,* 447 B.R. 752 (Bankr. D.S.C. 2011) (stating [b]ecause the Court has determined Debtor is a municipality, S.C. Code § 6-1-10 specifically authorizes it to file bankruptcy. Debtor meets this requirement of section 109(c).").

**3. The Debtor is Insolvent.**

Section 109(c)(3) requires that the chapter 9 petitioner be insolvent. 11 U.S.C. § 109(c)(3). Section 101 of the Bankruptcy Code provides that a municipality is insolvent when its financial condition is such that it is (i) generally not paying its debts as they become due unless such debts are the subject of a bona fide dispute; or (ii) unable to pay its debts as they become due. 11 U.S.C. § 101(32)(C). Insolvency is determine based on the debtor's financial condition as of the date the petition is filed. *In re Hamilton Creek Metropolitan Dist.*, 143 F.3d 1381, 1384 (10th Cir. 1998); *In re City of Bridgeport,* 129 B.R. 332, 337 (Bankr. D. Conn. 1991).

As described in detail above, the Debtor is and has been operating at a loss and is unable to consistently pay its debts as they become due. Year to date, for the six months ending March, 2011, Debtor has operated at a loss of $1,525,197. As of the date the Debtor filed its petition, it is clear the Debtor is unable to "pay its bills as they become due". 11 U.S.C. § 101(32)(C). In short, the Debtor is insolvent within the meaning of 11 U.S.C. §§ 101(32)(C) and 109(c)(3).

**4. The Debtor Desires to Effect a Plan to Adjust its Debts.**

Section 109(c)(4) requires that a chapter 9 petitioner desire to effect a plan to adjust its

---

income taxation under the laws of the United States."

debts. As certified by the Debtor in its Statement of Qualifications Under 11 U.S.C. § 109(c), and demonstrated by the pre-petition efforts of the Debtor, the Debtor desires to effect a plan of adjustment with respect to its debts in this case.

**5. The Negotiation Requirements Under Section 109(c)(5) Are Satisfied.**

Section 109(c)(5) requires that a chapter 9 petitioner demonstrate that it has satisfied or is excused from certain pre-petition negotiation standards with respect to its creditors. *See* 11 U.S.C. § 109(c)(5); In re Connector 2000 Ass'n, 447 B.R. 752 (Bankr. D.S.C. 2011); *In re Valley Health Sys.,* 383 B.R. 156, 165 (Bankr. C.D. Cal. 2008). A debtor must satisfy one of the following four options to satisfy Section 109(c)(5):

> (1) The debtor has obtained the agreement of creditors holding at least a majority in the amount of claims of each class that the debtor intends to impair through its plan;
> (2) The debtor has negotiated in good faith but failed to obtain the agreement of creditors holding at least a majority in the amount of claims of each class that the debtor intends to impair under its plan;
> (3) The debtor is unable to negotiate with its creditors because such efforts are impracticable; or
> (4) The debtor must reasonably believe that a creditor may attempt to obtain a preference.

11 U.S.C. § 109(c)(5). The Debtor satisfies the third requirements: it is unable to negotiate with its creditors because such negotiation is impracticable.

A. <u>The Debtor was unable to negotiate with its creditors because such negotiation was impractical.</u>

Section 109(c)(5)(C) excuses a debtor from satisfying a pre-petition negotiation standard if "such negotiation is impracticable." 11 U.S.C. § 109(c)(5)(C). The Debtor meets this standard.

Negotiating with creditors pre-petition is impracticable within the meaning of 11 U.S.C. § 109(c)(5)(C) if there are a large number of creditors which makes negotiation a plan of adjustment impossible. *See In re County of Orange*, 183 B.R. 594, 608 (Bankr. C.D. Cal. 1995)

("Congress enacted § 109(c)(5)(C) specifically 'to cover situations in which a very large body of creditors would render prefiling negotiations impracticable'") (citations omitted).

The Debtor has been unable, prior to the filing of its chapter 9 petition to negotiate with its creditors to reach an agreement with the holders of at least a majority in amount of each class to be impaired under a plan of adjustment because such negotiation is impractical given the numerosity of holders of claims in the classes envisioned to be impaired under a plan of reorganization. The bulk (approximately 95%) of the Debtor's approximately 300 creditors are unsecured trade creditors holding claims of less than $10,000. It was simply impractical for the Debtor to negotiate with these creditors prior to filing its petition. *See Orange County*, 183 B.R. at 607 ("the impracticality requirement may be satisfied based on the sheer number of creditors involved."); *In re Villages at Castle Rock Metro. Dist. No. 4*, 145 B.R. 76, 85 (Bankr. D. Colo. 1990) ("It certainly was impracticable for [debtor] to have included several hundred Series D bondholders in these conceptual discussions.").

Numerosity of creditors is not the only circumstance under which the impracticability requirement might be satisfied. *In re Valley Health Sys.,* 383 B.R. 156, 165 (Bankr. C.D. Ca. 2008). Negotiations may be impractical where it is necessary to file a chapter 9 case to preserve the assets of a municipality, where a delay in filing a petition to negotiate with creditors would put those assets at risk. *See Orange County,* 183 B.R. 594 at 607-08 (negotiation impractical where there was no time to enter into negotiations with its participants due to the threat of liquidation assets); *see also* 2 Collier P 109.04[3][e][iii] at 109-35 ("[W]here it is necessary to file a chapter 9 case to preserve the assets of a municipality, delaying the filing to negotiate with creditors and risking, in the process, the assets of the municipality makes such negotiations impracticable"). Even if the Debtor could negotiate with the majority of its creditors, which the

Debtor cannot, the Chapter 9 filing is necessary to protect the Debtor's assets, continue its business operations, and continue providing uninterrupted healthcare services to its patients while simultaneously developing a comprehensive plan for adjustment of debts.

Accordingly, the impracticality standard under Section 109(c)(5)(C) is satisfied.

## III. CONCLUSION

For all the foregoing reasons, the Debtor is eligible to be a debtor under Section 109(c) of the Bankruptcy Code.

**HAYNSWORTH SINKLER BOYD, P.A.**

**By:** /s/ Stanley H. McGuffin
District ID No. 2833
Lindsey Carlberg Livingston
District ID No. 9518

Post Office Drawer 11889
Columbia, South Carolina 29211
(803) 779.3080 Tel
(803) 765.1243 Fax
bshortl@hsblawfirm.com
llivingston@hsblawfirm.com

June 20, 2011

Attorneys for Debtor

#1520817v2

04/15/2011 10:20 8032455384 NESS JETT PAGE 05/09

FROM:SC LEGIS COUNCIL TO: 8032455384 MAY 3, 1990 10:09AM P.02

# Acts and Joint Resolutions

OF THE

## GENERAL ASSEMBLY

OF THE

# State of South Carolina

---

REGULAR SESSION OF 1949

---

First Part

of Forty-Sixth Volume of Statutes at Large

---

PRINTED UNDER DIRECTION OF
JOINT COMMITTEE ON PRINTING
GENERAL ASSEMBLY OF SOUTH CAROLINA

EXHIBIT
1

(R182, 9140)

No. 308

AN ACT To Create The Bamberg County Memorial Hospital Board; To Provide For Appointment Of The Members Thereof, Fix Their Terms Of Office And Prescribe Their Powers And Duties; To Authorize The Building, Construction, Equipment And Furnishing Of A Hospital And Nurses' Home In The County Of Bamberg, And To Provide For The Maintenance, Management And Operation Of Said Hospital And To Authorize The Acceptance By Said Board Of Grants And Gifts Of Money Or Property To Aid In Accomplishing The Purposes Of This Act.

BE IT ENACTED by the General Assembly of the State of South Carolina:

SECTION 1: Bamberg County memorial hospital board.—There is hereby created in and for the County of Bamberg a board to be known as, "Bamberg County Memorial Hospital Board", hereinafter referred to as the "Board", which shall consist of nine (9) members who are citizens of Bamberg County and who are named or shall hereafter be appointed, and serve without compensation, for the terms, exercise the powers and discharge the duties, as hereinafter provided.

SECTION 2: Personnel—terms.—That C. M. Brabham, W. L. Brannon, J. Z. Brooker, E. R. Cooner, C. A. Gray, J. C. Horne, F. T. Hutto, C. M. Kinsey and N. P. Smoak, Jr., citizens of Bamberg County, shall first comprise and constitute the membership of said Board, three of whom shall serve as members thereof for a term of two years, three for a term of four years, and three for a term of six years, or until their respective successors shall have been appointed and commissioned as hereinafter provided, the length of the term of each of said members to be determined by lot by use of such method as they may elect; and the terms of all of said members shall begin upon the approval of this Act.

SECTION 3: Appointment—term.—That upon the expiration of the terms of said members of the Board, named as such and provided for under Section II above, their respective successors shall be appointed by the Governor, two-thirds upon the recommendation of the Bamberg County Legislative Delegation and the remaining one-third upon the recommendation of the Bamberg County Medical Association, and all of whom shall serve as such members for the term

Memorial Hospital
Members Thereof,
ir Powers And Du-
n, Equipment And
In The County Of
ance, Management
horize The Accept-
f Money Or Prop-
Of This Act.

f the State of South

pital board.—There
berg a board to be
al Board", herein-
onsist of nine (9)
id who are named
compensation, for
duties, as herein-

Brabham, W. L.
, J. C. Horne, F.
izens of Bamberg
embership of said
eof for a term of
for a term of six
e been appointed
th of the term of
e of such method
mbers shall begin

he expiration of
s such and pro-
cessors shall be
ommendation of
remaining one-
nty Medical As-
ers for the term



of six years, and until their respective successors shall have been duly appointed and commissioned.

SECTION 4: Vacancy.—In the event of a vacancy arising on said Board by reason of death, resignation or otherwise, such vacancy shall be filled by appointment of the Governor, for the unexpired term only, and upon the recommenation of the Bamberg County Legislative Delegation or the Bamberg County Medical Association, the one of which recommended the appointment of the member whose position is then vacant. PROVIDED, in the event of a vacancy occurring in the membership of the Board created under Section 11 of this Act, such vacancy shall be filled by appointment of the Governor upon the recommendation of the Bamberg County Legislative Delegation.

SECTION 5: Commission.—The Secretary of State shall issue in due form a commission to each of the members of said Board who are named or may hereafter be appointed as such under the provisions of this Act.

SECTION 6: Officers—quorum—majority rule—county agency.—The Board shall elect from its membership a chairman, a vice-chairman and a secretary. A majority of the members of the Board shall constitute a quorum for the purpose of holding meetings, but all questions shall be determined by a majority vote of the entire Board. The Board is hereby constituted an agency of the County of Bamberg.

SECTION 7: Advisory committee.—The doctors of Bamberg County shall serve as an advisory committee and it shall be their duty to assist and advise the Board in all matters pertaining to the selection of a site and the building, equipping and furnishing the hospital and nurses' quarters hereinafter referred to.

SECTION 8: Purpose—hospital—nurses' home.—The Board is created for the purpose of building, constructing, equipping, furnishing and operating a building in the County of Bamberg to be known as the "Bamberg County Memorial Hospital" in honor of the men and women from Bamberg County who served their Country in the armed forces in all past and future wars. The Board is also authorized, if and when it deems necessary, and expedient, to build, construct, equip and furnish a building to be used as a nurses' home. In lieu of building a nurses' home the Board is authorized in its discretion to lease and furnish some suitable building to be used as a

nurses' home. The Board is hereby authorized and empowered to carry out the purposes of this Act and in so doing may exercise in the name of Bamberg County all powers necessary for constructing public projects including the right of condemnation.

SECTION 9: Site of buildings.—The Board is authorized and empowered to select a proper and adequate site for erecting the buildings heretofore mentioned. The site selected should be large enough to provide for future expansion and also for parking. The land should be well drained, or be of such a nature as to permit proper drainage and should possess all other characteristics necessary for the location and operation of a hospital.

SECTION 10: Gifts—employees—contracts.—The Board is authorized and empowered to apply for, receive and accept, in and on behalf of Bamberg County, any gift and/or grant of money or property, or anything of value from the United States of America and/or from any other source whatsoever, as aid in accomplishing the purpose of this Act. All things of value received by the Board under the provisions of this Act shall be received in the name of Bamberg County and held and used by the Board as an agency of the County. The Board is authorized and empowered to appoint and employ an architect and other officers, agents and employees, and to fix their compensation, also to execute and deliver all contracts deemed necessary and advisable to carry out the provisions of this Act.

SECTION 11: Operate and manage hospital.—As soon as the hospital has been constructed, furnished and equipped the Board shall make all necessary rules and regulations for the operation and management thereof. The Board shall also select all officers and employees of the hospital and shall fix their compensation. The treasurer and superintendent of the hospital shall be bonded in an amount to be fixed by the Board, and the Board shall determine the amount of bonds, if any, for other employees. The Board shall conduct the hospital within the revenue provided by the pay patients of said hospital together with such donations as may be obtained from any source and such appropriations as may be made annually by the County for charity patients. The Board shall have no power to bind the County for any financial obligations for operating the hospital above the amount actually appropriated each year.

SECTION 12: Funds use—expenditures.—The Board is authorized to expend from the surplus funds of Bamberg County an amount



[No. 398

empowered to
may exercise in
or constructing

orized and em-
ting the build-
large enough
The land should
roper drainage
for the loca-

Board is au-
cept, in and on
oney or prop-
merica and/or
shing the pur-
oard under the
e of Bamberg
of the County.
and employ an
d to fix their
deemed neces-
. Act.

s soon as the
ed the Board
operation and
fficers and em-
on. The treas-
l in an amount
ue the amount
ll conduct the
ts of said hos-
rom any source
the County for
and the County
ital above the

ard is author-
nty an amount

not to exceed One Hundred and Fifty-five Thousand ($155,000.00) Dollars, this amount to include the sum of Sixty-Six Thousand ($66,000.00) Dollars, heretofore received from the State of South Carolina for hospital purposes, if so much be necessary, for the purpose of purchasing a site and for constructing, equipping and furnishing the hospital and nurses' quarters referred to above. If a nurses' home is not built the Board shall reserve from the amount specified above a sufficient amount to properly construct, equip and furnish an adequate nurses' home at some future date. All expenditures shall be drawn upon warrants on the Treasurer of Bamberg County. The warrants to be approved by a majority of the Board and signed by the chairman and secretary. The Treasurer is hereby authorized and directed to issue vouchers upon warrants so signed and to pay the money out of the general surplus funds of Bamberg County, including the money received from the State of South Carolina for building and constructing hospitals. Any gifts, grants or donations received by the Board shall be turned over to the Treasurer of Bamberg County and shall be expended in the manner hereinabove provided.

SECTION 13: Repeal.—All Acts or parts of Acts inconsistent with this Act are hereby repealed to the extent of such inconsistency.

SECTION 14: Time effective.—This Act shall take effect upon its approval by the Governor.

Approved the 23rd day of March, 1949

(R621, H1775) No. 399

AN ACT To Authorize The Issuance And Sale By The Trustees Of Olar School District No. 8, Of Bamberg County, The State Of South Carolina, Of Not Exceeding Twenty-One Thousand ($21,000.00) Dollars Of Coupon Bonds Of Said School District, The Proceeds Thereof To Be Used To Erect And Equip A Gymnasium And Auditorium In Said District, And To Provide A Tax Levy For The Payment Thereof.

BE IT ENACTED by the General Assembly of the State of South Carolina:

SECTION 1: Olar school district No. 8 issue bonds for gymnasium and auditorium, Bamberg County.—The Trustees of Olar