**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

Case No. 11-03877-jw

**ORDER DETERMINING THAT PATIENT CARE OMBUDSMAN UNDER SECTION 333(a)(1) OF THE BANKRUPTCY CODE IS NOT NECESSARY**

The relief set forth on the following page, for a total of 9 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**07/18/2011**



*John E Waites*

Chief US Bankruptcy Judge
District of South Carolina

Entered: 07/19/2011

1

IN THE UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA

In re:

Bamberg County Memorial Hospital,

Debtor.

Case No. 11-03877-jw
Chapter 9

**ORDER DETERMINING THAT PATIENT CARE OMBUDSMAN UNDER SECTION 333(a)(1) OF THE BANKRUPTCY CODE IS NOT NECESSARY**

This matter is before the Court on the Motion of Bamberg County Memorial Hospital (the "Debtor") seeking entry of an Order finding the appointment of a patient care ombudsman pursuant to 11 U.S.C. § 333(a)(1) is not necessary for the protection of patients in this case (the "Motion"). The United States Trustee filed a Response to the Motion ("UST Response"). No creditor or other party in interest filed a response the Motion or appeared at the hearing. The Court, having reviewed and considered the Motion, the UST Response, the testimony and evidence submitted into the record at the hearing on the Motion, and having heard the statements of counsel for the Debtor and the United States Trustee at the hearing; and after due deliberation thereon and good cause appearing therefore, the Bankruptcy Court hereby makes and issues the following Findings of Fact, Conclusions of Law and Orders:

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

1. The Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this case is proper in this Court pursuant to 28 U.S.C. § 1408.

2. Debtor operates as a hospital located in the city of Bamberg, SC on 509 North Street a short distance from US Highway 301. Debtor is licensed for 59 beds but currently operates 25 beds with both private and semi-private rooms. The average daily census of Debtor

2

is 6 to 8 patients. Debtor was constructed in 1952 and had 32 beds. Over the years beds and services were added with the final addition bringing the total to 59 beds in 1982. In 2009, Debtor's building was renovated. The hospital has 1 operating room, 2 endoscopy rooms, and 1 procedure room along with 2 LDR rooms located in close proximity to the operating suite.

     3.    The property on which the facilities exist and the physical facilities are owned by the County.  The Debtor provides general medical and surgical care in inpatient, outpatient, and emergency room service areas.  The Debtor has 11 physicians on active medical staff and 9 are Board Certified.

     4.    The Debtor is reviewed annually by the South Carolina Department of Health and Environmental Control ("DHEC") and Centers for Medicare and Medicaid Services ("CMS"). The Debtor is in full compliance with the patient care and safety standards established by CMS and DHEC.  Additionally, the Debtor maintains the appropriate and necessary licenses to operate in the State of South Carolina, which license is renewed annually, and granted based on surveys, patient complaints, ability to meet emergency preparedness and life safety requirements.

     5.    The Debtor is subject to unannounced inspections by DHEC for licensing and certification purposes, to monitor compliance with regulations, and to follow up on patient complaints.  If the Debtor failed a DHEC inspection or failed to correct an issue of non-compliance with federal or state regulations, the Debtor could lose its license to operate as a hospital.  The last DHEC inspection was in June 2010.  The Debtor corrected all issued raised in the report issued by DHEC after the June 2010 inspection, and the Debtor received a letter from DHEC on September 22, 2010 stating that the hospital was in full compliance.  The Debtor's 2011 inspection has not yet occurred, but Debtor expects it to be any day.  The Debtor must also follow Occupational Safety and Health Administration ("OSHA") guidelines.

6. The Debtor has internal operating guidelines with respect to its patients and their care. When a patient is admitted, the Debtor determines a patient care plan for care which is appropriate and in planned manner consistent with the patient rights and needs.

7. Upon admission to the hospital, the Debtor informs, in writing, each patient as the time of admission of the patient's rights. Each patient receives The Patient's Bill of Rights and Responsibilities, Medicare Rights, Louis Blackman Act, and Privacy Practice from the Registrar. The Patient's Bill of Rights and Responsibilities includes the grievance procedure for the hospital should a patient feel that any of their rights have been violated during a visit or admission to the hospital. A log of grievances is kept by the Debtor which notes the complaint and the resolution of the grievance.

8. The average length of impatient stay for patients is 3 to 4 days. The staffing ratios for each patient is based upon the patient's needs, and a staffing assignments are made daily according to the specific acuity level of the patient. Generally, the nurse to patient ratio's without additional factors that may affect acuity level is 1 nurse to 5 patients.

9. On or about May 2, 2011, the Debtor's Board retained Healthcare Management Partners, LLC ("HMP"), an independent hospital turnaround management company, to supervise and direct the general management and operations of the Debtor and oversee the delivery of patient services. HMP is a nationally recognized consultant in the management of financially distressed hospitals and other types of healthcare providers. In other bankruptcy cases involving HMP acting as the management company for debtors, courts have determined that appointment of an Ombudsman was unnecessary in part based upon the management and direction of HMP to insure the protection of its patients.

10. On June 20, 2011, the Debtor has filed a petition seeking relief under chapter 9 of

4

the United States Bankruptcy Code ("Bankruptcy Code").  On the same day, the Debtor filed the Motion seeking an order that the appointment of a patient care ombudsman under 11 U.S.C. § 330(a)(1) was not necessary for the protection of patients under the specific facts of this case.

11. If the debtor in a case under chapter 9 is a health care business, the appointment of a patient care ombudsman is mandated by § 333(a)(1), not later than 30 days after commencement of the case, to monitor the quality of patient care and to represent the interests of the debtor's patients "unless the court finds that appointment of such ombudsman is not necessary for the protection of patients under the specific facts of the case."  An ombudsman appointed under § 333(a)(1) monitors the quality of patient care provided to patients of the debtor and reports to the court regarding the quality of patient care provided to patients of the debtor. 11 U.S.C. § 333(b).  It is clear the Debtor is a "health care business" under § 107(27)(A), as it is a public agency engaged in offering health care services through its hospital facilities to the residents of the County, and therefore §333(a)(1) is applicable to the Debtor.

12. In determining whether a patient care ombudsman is necessary under the specific facts of a case, courts have examined the following nine non-exclusive factors: 1) the cause of the bankruptcy; 2) presence and role of licensing or supervising entities; 3) debtors past history of patient care;  4) the ability of the patients to protect their rights; 5) level of dependency of the patients on the facility; 6) likelihood of tension between the interests of the patients and the debtor;  7) potential injury to the patients if the debtor drastically reduced its level of patient care; 8) presence and sufficiency of internal safeguards to ensure appropriate level of care; and 9) impact of the cost of an ombudsman on the likelihood of a successful reorganization. *In re Valley Health Sys,* 381 B.R. 756 (Bankr. C.D. Cal. 2008); *In re Alternate Family Care*, 377 B.R. 754, 758 (Bankr. S.D. Fla. 2007).   "Other factors to be considered by the court include: (1) the

5

high quality of the debtor's existing patient care; (2) the debtor's financial ability to maintain high quality patient care; (3) the existence of an internal ombudsman program to protect the rights of patients, and/or (4) the level of monitoring and oversight by federal, state, local, or professional association programs which renders the services of an ombudsman redundant." *Valley Health,* 381 B.R. at 761 (citing 3 *Collier on Bankruptcy P 333.02*, at 333-4 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. 2007)).

13. Since the enactment of section 333, bankruptcy courts have exercised their discretion and held the appointment of an ombudsman unnecessary. *See In re RAD/ONE, P.A.*, 2009 Bankr. LEXIS 417 (Bankr. N.D. Miss. Feb. 24, 2009 (court declined to appoint patient care ombudsman where debtor had an existing internal ombudsman program and was compliant with regulatory agency requirements); *In re Valley Health Sys.*, 381 B.R. 756 (Bankr. C.D. Cal. 2008) (court declined to appoint patient care ombudsman where health care district had no history of patient care problems and adequate internal monitoring systems); *In re Saber, M.D.,* 369 B.R. 631 (Bankr. D. Colo. 2007) (court declined to appoint patient care ombudsman where debtor was a single physician entity, with 20 years of experience, in good standing with a positive cash flow who filed bankruptcy for reasons unrelated to patient care); *In re Medical Assocs. of Pinellas,* 360 B.R. 356, 361 (Bankr. M.D. Fla. 2007) (court declined to appoint patient care ombudsman where debtor had ceased operation); *In re Total Woman Healthcare Center, P.C.,* 2006 Bankr. LEXIS 3411 (Bankr. M.D. Ga. Dec. 14, 2006) (court declined to appoint patient care ombudsman where patient care had not been affected by bankruptcy and debtor's obligations not related to patient care).

14. Considering the factors under the specific facts and circumstances in this case, the Court finds the balance weighs against the appointment of a patient care ombudsman pursuant to

6

§ 333(a)(1).

15.     Factor 1: Cause of Bankruptcy:  Debtor is seeking relief under chapter 9 due to a shortfall of revenue to pay its debts, not because there are any allegations of deficiency patient care.

16.     Factor 2: Presence of Licensing/Supervising Entities**:** The Debtor is subject to substantial monitoring by a variety of federal and state regulatory agencies as described above. Additionally, Debtor is compliance with all applicable federal and state regulations.

17.     Factors 3 and 8: Debtor's Past History of Patient Care/Internal Safeguards:   The Debtor has served the residents of the County since 1952.  The Debtor has adopted internal procedures to ensure the highest level of patient care and to resolve expeditiously complaints that may arise concerning patient care.  Furthermore, there is no evidence of action taken by any federal or state regulatory authority against the Debtor due to patient care issues.

18.     Factors 4 and 6:  Ability of the Patients to Protect Their Rights; The Likelihood of Tension Between the Interests of the Patients and the Debtor:  The Debtor has implemented internal quality controls and procedures for monitoring patient care at the hospital.  There are procedures in place for handling and resolving any complaints made by patients.  The patient are informed, in writing, of their rights upon being admitted to the hospital.

19.     Factor 5: Level of Dependency of Patients on the Facility.  The Debtor provides general medical and surgical care in inpatient, outpatient, and emergency room service areas at the hospital.  The patients under the Debtor's care are dependent on the Debtor for their health, safety and welfare when at the hospital, however, the average length of inpatient stay is on 3 to 4 days.

20.     Factor 7: Potential Injury to Patients if the Debtor Drastically Reduced its Level

7

of Patient Care. The Debtor is meeting and/or exceeding national staffing ratios. HMP is working to ensure that patient care is provided in an appropriate and planned manner consistent with patient's rights and needs.

21. Factor 9: Impact of the Cost of an Ombudsman on the Likelihood of a Successful Reorganization. For the reasons discussed above, it appears that a patient ombudsman is not currently necessary in this case to protect the interest of the patient and would unnecessarily duplicate services already being provided to the Debtor. Given the level of internal controls and oversight by federal and state agencies and the management of HMP, a nationally recognized hospital management company, the services of a patient care ombudsman would be redundant at this point in time.

22. Accordingly, weighing the above factors under the specific facts and circumstances in this case, the balance weighs against the appointment of a patient care ombudsman pursuant to § 333(a)(1) at this time. However, the Debtor shall inform the United States Trustee's Office, on a monthly basis, of grievances made by patients, and/or any reports or other actions taken by DHEC, CMS or other regulatory agency to ensure that if a change circumstances occurs, a patient care ombudsman could be appointed at that time.

**IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED THAT:**

1. The Debtor's Motion is granted as the appointment of a patient care ombudsman pursuant to 11 U.S.C. § 333(a)(1) is not necessary at this time for the protection of patients under the specific facts of this case. However, the Court, on motion of the United States Trustee or any party in interest, may order the appointment of a patient care ombudsman at any time during the pendency of this case if the Court finds a change in circumstances or newly discovered evidence that demonstrates the necessity of an patient care ombudsman to monitor the quality of patient

care and protect the interests of patients; and

   2. The Debtor shall inform the United States Trustee's Office, on a monthly basis, of grievances made by patients, and/or any reports or other actions taken by DHEC, CMS or other regulatory agency.

**AND IT IS SO ORDERED.**