**UNITED STATES BANKRUPTCY COURT
DISTRICT OF SOUTH CAROLINA**

In re:

Bamberg County Memorial Hospital,

              Debtor.

Case No. 11-03877
Chapter 9

**ORDER CONFIRMING DEBTOR'S FIRST AMENDED PLAN FOR ADJUSTMENT OF
DEBTS PURSUANT TO CHAPTER 9 OF THE BANKRUPTCY CODE**

This matter is before the Court for confirmation of the First Amended Plan for
Adjustment of Debts [Doc. 165] as modified by the Debtor's Modification to the First Amended
Plan for Adjustment of Debts ("Modification") [Doc. 211] (collectively the "Plan") filed by
Bamberg County Memorial Hospital (the "Debtor").  Objections to Debtor's Plan were filed by
The Official Committee of Unsecured Creditors (the "Committee"), The United States of
America on behalf of the United States Department of Health and Human Services ("HHS"), and
General Electric Company d/b/a GE Healthcare Diagnostic Imaging ("GE").  A hearing was held
on Debtor's Plan on April 30, 2012 and May 3, 2012.  Prior to or at the conclusion of the
hearing, all objections to the Plan were consensually resolved except for the objections of GE.
Based on the findings of fact and conclusions of law stated on the record at the hearing and set
forth in detail below, Debtor's chapter 9 Plan is confirmed.

**HISTORY AND BACKGROUND OF DEBTOR**

The Debtor was created in 1949 by act of the South Carolina Legislature to provide
hospital facilities to the residents of Bamberg County (the "County").  The legislature observed
the principal purpose of the Act was to create a hospital for the residents of Bamberg County.
The legislature created the Bamberg County Hospital Board (the "Board") and charged it with

the responsibility of constructing a hospital and making all rules and regulations for the operations and management of the Debtor.  The Debtor operates as a hospital located in the city of Bamberg, South Carolina on 509 North Street, a short distance from US Highway 301.

The Debtor is and has been unable to pay its debts as they become due.  The County has assisted Debtor to some extent in the past with current operating needs, however the Debtor has been informed by the County that the County does not have the ability or intent to provide any assistance to the Debtor in the future. As a rural hospital, Debtor faces numerous business challenges, including a low customer volume and a high number of indigent patients. Consequently, the Debtor has a limited ability to pay for new technology and facilities that larger hospitals in neighboring areas can provide and which is necessary to attract specialty physicians to work at the hospital that, in turn, increase revenue and profit opportunities.  In fact, Debtor ceased offering medical services on April 30, 2102, due to a lack of operating funds or additional funding to continue offering such services.  Debtor has, however, maintained some staff to continue accounting and other functions necessary to wind up the affairs of  the Debtor and to implement the Plan if it were to be confirmed.

Based upon those factors and others, the Debtor, along with Barnwell County Hospital, (together with the Debtor, being hereafter referred to as the "Hospitals"), sought a third party purchaser to combine the existing primary service areas and healthcare facilities and businesses located in and owned by Bamberg and Barnwell Counties, South Carolina (collectively, the "Counties"), into one regional hospital or health system in order to provide their residents access to efficient and effective healthcare, and to have that care delivered through well-equipped, contemporary facilities designed to meet the specific needs of each community.  In order to provide such access, it was decided that a collaborative regional system for healthcare for the

residents of the Counties would attract the financial support needed to provide healthcare services that can sustain themselves through changes in medical technology, regulations, and reimbursement, and can support continued upgrades in facilities and services.

To help the Counties find a third party to achieve the Counties' goals, the Counties engaged Stroudwater Capital ("Stroudwater") to reach out to all interested people in the region, determine what was important to the residents of the Counties and find potential parties who were interested in developing the regional health system. After an extensive solicitation process, SC Regional Health System, LLC ("RHS") was identified and approved as the entity best suited to acquire substantially all of the assets of the hospitals and create a regional health system in accordance with the identified goals of the Counties.

On September 29, 2011, the Debtor, along with Barnwell County Hospital (which has also filed a chapter 9 bankruptcy petition), and the Counties, executed an Asset Purchase Agreement ("APA") with RHS for the acquisition of substantially all of the assets of the Hospitals. The parties also executed a Development Agreement. The APA and Development Agreement provide that RHS will develop and operate an integrated healthcare delivery system to be known as the Regional Health System ("Regional Health System") to serve both Counties. The APA and Development Agreement provide for the construction of a new hospital with at least 23 in-patient beds.

The Plan is based on the APA and contemplates that both the Debtor and Barnwell County Hospital will have filed bankruptcy. Both the Debtor and Barnwell County Hospital must be successful in having their respective plans confirmed or the APA will not be consummated.

## CONFIRMATION OF DEBTOR'S PLAN

The Debtor having:

a. on June 20, 2011 (the "Petition Date"), filed its voluntary petition for relief under chapter 9 of the United States Bankruptcy Code (the "Bankruptcy Code"),[1] in the United States Bankruptcy Court for the District of South Carolina (the "Bankruptcy Court");

b. published notice of the filing of its chapter 9 petition and request for the entry of an order for relief thereunder in *The State* and *Adveritzer-Herald* newspapers, and in addition, mailed notice to all known creditors and parties in interest;

c. filed, on February 10, 2012, a disclosure statement and plan for adjustment of debts;

d. filed, on March 23, 2012, a First Amended Disclosure Statement and First Amended Plan for Adjustment of Debts, which was thereafter supplemented, modified and amended on May 9, 2012, (as such, the "Disclosure Statement" and "Plan", respectively);

e. distributed solicitation materials consistent with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the District of South Carolina Local Bankruptcy Rules (the "Local Bankruptcy Rules"), and the Order (I) Scheduling Hearing on Confirmation of the First Amended Plan for Adjustment of Debts; (II) Approving Solicitation Procedures; (III) Establishing Deadlines; and (IV) Approving Form and Manner of Notice of the Confirmation Hearing [Docket No. 169] (the "Solicitation Procedures Order");

f. filed, on April 27, 2012, Debtor's Ballot Tabulation ("Ballot Tally"), detailing the results of the Plan voting process; and

---

[1] Further references to the Bankruptcy Code (11 U.S.C. §§ 101 *et seq.*) may be by section number only.

g.      filed, on May 4, 2012, the Debtor's Memorandum in Support of Confirmation of the Plan ("Plan Confirmation Brief").

The Bankruptcy Court having:

a.      conducted a hearing on the Disclosure Statement on March 19, 2012 and approved the Disclosure Statement by Order dated March 23, 2012;

b.      entered the Solicitation Procedures Order on March 23, 2012;

c.      set April 30, 2012 at 10:00 a.m., prevailing Eastern Time, as the date and time for the commencement of the hearing to consider confirmation of the Plan (the "Confirmation Hearing");

d.      reviewed the Plan, the Disclosure Statement, the Ballot Tally, the Plan Confirmation Brief and all filed pleadings, exhibits, statements and comments regarding confirmation of the Plan under the Bankruptcy Code ("Confirmation"), including all objections, statements and reservations of rights;

e.      heard the statements, arguments and objections made by counsel in respect of Confirmation;

f.      considered all oral representations, testimony, documents, filings and other evidence regarding Confirmation;

g.      overruled any and all objections to the Plan and Confirmation thereof; and

h.      taken judicial notice of the papers and pleadings filed in this chapter 9 Case.

NOW, THEREFORE, it appearing to the Bankruptcy Court that notice of the Confirmation Hearing and the opportunity for any party-in-interest to object to Confirmation have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby, and the legal and factual bases set forth in the documents

filed in support of Confirmation and presented at the Confirmation Hearing establish just cause

for the relief granted herein; and after due deliberation thereon and good cause appearing

therefore, the Bankruptcy Court hereby makes and issues the following Findings of Fact,

Conclusions of Law and Orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

**Jurisdiction and Venue.**

The Bankruptcy Court has jurisdiction over this chapter 9 case pursuant to 28 U.S.C.

§ 1334. Venue in the Bankruptcy Court was and is proper under 28 U.S.C. §§ 1408 and 1409.

The Debtor is an entity eligible for relief under Bankruptcy Code § 109(c). Confirmation of the

Plan constitutes a core proceeding under 28 U.S.C. § 157(b)(2), and the Bankruptcy Court has

exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of

the Bankruptcy Code and should be confirmed.

**Judicial Notice.**

The Bankruptcy Court takes judicial notice of (and deems admitted into evidence for

Confirmation) the docket of this chapter 9 case, including all pleadings and other documents on

file, all orders entered, all hearing transcripts and all evidence and arguments made, proffered or

adduced at the hearings held before the Bankruptcy Court during the pendency of this case. Any

resolutions of objections to Confirmation explained on the record at the Confirmation Hearing

are hereby incorporated by reference. All unresolved objections, statements and reservations of

rights are hereby overruled on the merits.

**Burden of Proof.**

Debtor has met its burden of satisfying the confirmation requirements of § 943(b) by a

preponderance of the evidence, which is the applicable evidentiary standard. *See In re Pierce*

*County Hous. Auth.*, 414 B.R. 702, 715 (Bankr. W.D. Wash. 2009); *In re Mount Carbon Metro. Dist.*, 242 B.R. 18, 31 (Bankr. D. Colo. 1999).

**Notice, Solicitation and Acceptance.**

On March 23, 2012, the Bankruptcy Court approved the Disclosure Statement as containing adequate information in accordance with the Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules.   On March 23, 2012, the Bankruptcy Court entered the Solicitations Procedures Order which (a) set April 25, 2012, as the Voting Deadline for voting to accept or reject the Plan, (b) fixed April 25, 2012, as the deadline for objecting to the Plan, (c) fixed April 30, 2012 at 10:00 a.m. prevailing Eastern Time as the date and time for the commencement of the Confirmation Hearing, and (d) approved the form and method of notice of the Confirmation Hearing set forth therein.

As evidenced by the Certificates of Service filed by the Debtor, due, adequate and sufficient notice of the Disclosure Statement, Plan and exhibits thereto, together with all deadlines for voting on or objecting to the Plan and the transactions contemplated thereby, has been given to: (a) all  classes of creditors entitled to vote on the Plan; (b) parties that requested notice, and (c) all other parties as provided in the Solicitation Procedures Order, in substantial and material compliance with the Solicitation Procedures Order and Bankruptcy Rules 2002(b), 3017 and 3020(b), and no other or further notice is necessary or shall be required.

Based on the record, the Debtor and its respective directors, officers, employees, managers, attorneys, affiliates, agents and professionals (including but not limited to their attorneys, financial advisors, investment bankers, accountants, and other professionals that have been retained by such parties) have acted in "good faith" within the meaning of Bankruptcy Code § 1125(e) and in compliance with the applicable provisions of the Bankruptcy Code, the

Bankruptcy Rules, the Local Bankruptcy Rules, the Solicitation Procedures Order and applicable non-bankruptcy law in connection with all of their respective activities relating to the tabulations and solicitation of acceptances or rejections of the Plan and their participation in the other activities described in Bankruptcy Code § 1125, and thus are entitled to the protections afforded by Bankruptcy Code § 1125(e) and the exculpation provisions set forth in Article X of the Plan. The Debtor and its respective present and former officers, directors, employees, advisors, attorneys, and agents did not solicit the acceptance or rejection of the Plan by any holders of claims prior to the approval and transmission of the Disclosure Statement.  In addition, all procedures used to distribute solicitation packages to holders of claims were fair, and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and all other applicable rules, laws and regulations. Such transmittal and service were adequate and sufficient, and no further notice is or shall be required.

Prior to the Confirmation Hearing, the Debtor filed the Ballot Tally. All procedures used to tabulate the Ballots were fair and conducted in accordance with the Solicitation Procedures Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules and all other applicable rules, laws and regulations.

**Fed. R. Bankr.P.  3016.**

The Plan is dated and identifies the parties submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the clerk of the Bankruptcy Court satisfied Bankruptcy Rule 3016(b).  The Plan and Disclosure Statement describe in specific and conspicuous language all acts to be enjoined and identify the entities that would be subject to the injunction, therefore Bankruptcy Rule 3016(c) is satisfied.

**Confirmation Requirements of Section 943(b) are Satisfied.**

As set forth in further detail below, the Plan complies with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, including Bankruptcy Code § 943(b).

**Section 943(b)(1) is Satisfied.**

Section 943(b)(1) requires as the first condition to confirmation that the plan comply with the provisions of the Bankruptcy Code made applicable by §§ 103(f) and 901. Section 901(a) incorporates, among other things, the plan confirmation requirements of §§ 1129(a)(2), (a)(3), (a)(6), (a)(8), (a)(10), (b)(1), (b)(2)(A), and (b)(2)(B). Debtor's Plan complies with each of these confirmation requirements.

Debtor Has Complied with § 1129(a)(2).

Section 1129(a)(2) requires that the proponent of the plan comply with the applicable provisions of title 11. In a chapter 9 case, the particular provisions that require compliance by Debtor in connection with administration of the case and confirmation of the plan are the provisions of § 1125, which require that the court approve a disclosure statement containing adequate information before acceptances or rejections of a plan may be solicited. By Order dated March 23, 2012, the Bankruptcy Court approved Debtor's Disclosure Statement. Section 1129(a)(2) is satisfied here.

Section 1129(a)(3) is Satisfied as Debtor's Plan is Proposed in Good Faith by Lawful Means.

Section 1129(a)(3) requires that the plan be "proposed in good faith and not by any means forbidden by law". In this case, the Plan maximizes the economic return to the Debtor's creditors of available funds in the most practicable way given the unusual and complex nature of this Case. The Plan devotes all of the Debtor's cash, accounts receivables and other assets

remaining after the closing of the sale to payment of the Debtor's creditors.  The Debtor has

obtained a fair price under the circumstances for its assets, and the Plan will therefore result in

satisfaction of certain of Debtor's secured debts, the payment of Allowed Administrative Claims,

and a distribution to unsecured claims, albeit the dividend is estimated to be small and to occur

over time.

A significant source of the recovery for creditors is expected to come from the Debtor's

continued participation in the Tax Setoff Program[2] which is established by S.C. Code Ann. § 12-

56-10, *et seq* and administered through the South Carolina  Department of Revenue.  The Plan

provides at Article V.B for the recovery from these funds to be available for payment of claims.

The Plan allows the Debtor to realize the value from these assets and distribute it to its

creditors.  Consequently, § 1129(a)(3) is satisfied here.

Section 1129(a)(6) is Not Applicable.

The only material regulatory pre-condition necessary for the implementation of the Plan

is the issuance of a certificate of need ("CON") to RHS for the operation of the new hospital.

However, RHS has agreed to waive this requirement.  *See* Notice of Execution of Waiver of

Closing Conditions Under Asset Purchase Agreement [Doc. No. 209]. There are no other

regulatory pre-conditions to the implementation of the Plan.    Therefore, § 1129(a)(6) is not

applicable.

The Plan Has Been Accepted by Each Class of Claims Impaired under Plan as Required under

§ 1129(a)(8).

Section 1129(a)(8) of chapter 11 requires as a condition to confirmation that the plan has

been accepted by each class of claims or interests that is impaired under the plan.  Acceptance of

---

[2] Debtor has filed a motion to assume to assume its executory contract with  the South Carolina Association of
Counties in  order to continue to participate in the tax setoff program. [Doc. No. 199].

a plan by a class is determined by the standards set in § 1126(c) which requires that, of the votes submitted, "at least two thirds in amount and more than one-half in number of the allowed claims" accept a proposed plan.  In this case, all impaired Classes affirmatively accepted the Plan in accordance with the voting standards of §1126(c).  Since § 1129(a)(8) is satisfied here, the "cramdown" provisions of § 1129(b) do not need to be analyzed in this case.

<u>One Impaired Class Has Accepted the Plan as Required by § 1129(a)(10).</u>

Under § 1129(a)(10), the court may confirm the plan only if, should any class of claims be impaired under the plan, at least one impaired class has accepted the plan.  In this case, all impaired classes affirmatively accepted the Plan.  Accordingly, § 1129(a)(10) is satisfied.

**Debtor Complies with all chapter 9 Provisions as Required by § 943(b)(2).**

Section 943(b)(2) requires as a condition to confirmation that the plan comply with the provisions of chapter 9.  The major requirements that are directed toward the plan in a chapter 9 case are those provisions of chapter 11 that are made applicable in chapter 9 cases by § 901(a).  These requirements are satisfied in this case as described above.

Although 11 U.S.C. § 363 is not incorporated into chapter 9 by § 901, chapter 9 does incorporate § 1123(b), which provides in subsection (4) that a plan may "provide for the sale of all or substantially all of the property of the estate,[3] and the distribution of the proceeds of such sale among holders of claims or interests."  The Plan is dependent upon the sale of the assets of Debtor, free of all liens, claims and interests as more fully set forth in the APA.

The Court has considered the reason that Debtor pursued a sale of its assets and the efforts it undertook to identify a purchaser that could help achieve the goal of providing quality medical care to the residents of the Counties.  Based upon the testimony and evidence presented, the Court finds that:

---

[3] "Property of the estate" in chapter 9 proceedings means "property of the debtor."  11 U.S.C. § 902(i).

a.    RHS is a good faith purchaser;

b.    The APA was entered into in good faith by the Debtor and RHS;

c.    The APA is approved and the Debtor is authorized to transfer the assets as contemplated by the APA to RHS, and

d.    The transfer of assets to RHS as contemplated by the APA and the Plan shall be free and clear of claims, liens and interests.

The only other provisions of chapter 9 which are directed toward the plan are § 941, requiring that the plan be proposed and filed by the debtor, and § 942, governing modifications of the plan.  Debtor has proposed and filed the Plan, satisfying § 941.  On May 9, 2012, Debtor filed the Modification to make certain changes to the Plan which set forth various terms to resolve objections from specific creditors and modify some administrative provisions in the Plan. The Modification does not adversely impact any creditors.  The Plan, as modified by the Modification, meets the requirements of chapter 9.  Sections 942 and 943(b)(2) are satisfied.

**Debtor has Disclosed Payments for Services and Expenses to be Paid in accordance with § 943(b)(3).**

Section 943(b)(3) requires that all amounts to be paid by the Debtor or other persons for services or expenses in the case or incident to the plan have been fully disclosed and are reasonable.  As set forth in the Disclosure Statement, the Debtor disclosed the amounts paid to professionals due and owing as of February 28, 2012.  Thereafter, counsel submitted an update of the amounts paid and due through March 31, 2012.  There have been no objections to the Plan based upon these disclosures.  The foregoing amounts are reasonable and necessary to effectuate the Plan and reorganization in this complex case, and thus § 943(b)(3) is satisfied.  Debtor anticipates filing a final report and application to close the case, at which time it will provide an

accounting of all fees and expenses incurred by Debtor's professionals.  This finding by the Court as to reasonableness of fees at this time is an interim finding subject to review and modification upon the filing of the final report.  Further, to the extent funds are not available to pay fees as of the Effective Date, counsel for Debtor has agreed to defer payment until such time as adequate funds are available.

**Debtor is Authorized to Take Actions Proposed in the Plan as Required by § 943(b)(4).**

Section 943(b)(4) prevents the court from confirming any plan that requires the debtor to take any action prohibited by law.  On June 16, 2011, the Board of Directors of Debtor adopted a resolution authorizing Debtor to do the acts authorized and directed to effect the consummation of the adjustment of Debtor's debts as provided in the Plan.  Debtor is not otherwise prohibited by law from taking any action necessary to carry out the Plan, and § 943(b)(4) is satisfied here.

**All Administrative Claims Have Been or Will Be Paid as Required by § 943(b)(5).**

As another confirmation requirement, § 943(b)(5) provides that the court must determine that the plan provides for the payment in full of all claims entitled to administrative expense priority.  Throughout the course of the chapter 9 Case, Debtor has endeavored to satisfy administrative expenses as they became due.  Accordingly, Debtor believes that all Claims that otherwise would constitute Allowed Administrative Claims previously have been or will be satisfied in the ordinary course of business prior to or within ten (10) days of the Effective Date of the Plan.  To the extent any claims are subsequently allowed as Administrative Claims, Debtor expects to have funds available form future receipts to pay such claims.  Section 943(b)(5) is satisfied in this Case.

**Section  943(b)(6) Is Not Applicable.**

Section 943(b)(6) requires regulatory or electoral approval for any action to be taken under the plan that would require such approval in the absence of the chapter 9 case.

With respect to electoral approval, the Court was advised at the Confirmation Hearing that Bamberg County Council was considering an amendment to the APA relating to the waiver of obtaining the CON as a pre-requisite to closing.  On May 8, 2012, Debtor filed a notice that Bamberg County Council had approved the amendment along with a copy of the signed amendment to the APA [Doc No.209].  There are no other electoral approvals needed for any action to be taken under the Plan.  Accordingly, § 943(b)(6) is satisfied.

**The Plan is in the Best Interest of Creditors and is Feasible in Accordance with § 943(b)(7).**

The final requirement for confirmation of a plan in a chapter 9 case is that the plan "is in the best interests of creditors and is feasible." 11 U.S.C. § 943(b)(7).  The analysis included in the Plan, the Plan Confirmation Brief, and the other evidence related thereto, submitted and adduced at or prior to the Confirmation Hearing: (a) are reasonable, persuasive and credible, (b) have not been controverted by other evidence and (c) establish that the Plan affords all creditors the potential for the greatest economic return from Debtor's assets.  Therefore, it is in the best interest of creditors, especially given the complex nature of this Case.  It appears that the Debtor has obtained a fair price for its assets under the APA, and the Plan will therefore result in satisfaction of certain of Debtor's secured debts, the payment of Allowed Administrative Claims, and a distribution to unsecured claims, albeit over time.

As noted, the  Debtor does not have enough money coming in to keep the hospital operating. In the absence of  plan it is unlikely that there would be any orderly distribution to creditors.  Instead, those creditors able to pursue litigation most quickly would benefit at the

expense of others.  Finally and of particular importance to the Court is that the Plan preserves the availability of healthcare services to citizens and patients in the County.

Under the Plan, the ability to make the payments required by the Plan turns on the ability of RHS, the Debtor, the Barnwell County Hospital, and the Counties to close the APA, and on collection of the outstanding accounts receivable.

RHS has placed no less than $1,500,000.00 on deposit in escrow, earmarked for its financial obligations relative to closing the APA, has presented evidence at the Confirmation Hearing of the financial wherewithal of it and its sponsor, Dobbs Equity Partners, LLC, with respect to funding the ongoing operation of the hospital in accordance with the APA and Development Agreement

Accordingly, the Plan is in the best interests of creditors and feasible.

**Satisfaction of Confirmation Requirements.**

Based on the foregoing, the Plan satisfies the requirements for confirmation set forth in § 943(b) of the Bankruptcy Code.

**Likelihood of Satisfaction of Conditions Precedent to Effectiveness.**

Each of the conditions precedent to Effectiveness, as set forth in Article IX.B.3. of the Plan, has been satisfied or waived in accordance with the provisions of the Plan, or is reasonably likely to be satisfied.

**Modifications to the Plan.**

Subsequent to solicitation, the Debtor made certain modifications to the Plan. All modifications to the Plan since the entry of the Solicitation Procedures Order are consistent with all of the provisions of the Bankruptcy Code, including, but not limited to, §§ 942 and 1127(d) of the Bankruptcy Code, the Federal Rules, including Rule 3019, and the Local Bankruptcy Rules.

None of the modifications made since the commencement of solicitation adversely affects the treatment of any creditor or equity security holder under the Plan. Accordingly, pursuant to § 1127(a) of the Bankruptcy Code, none of the modifications require additional disclosure or resolicitation, and under Rule 3019, creditors are deemed to have accepted the Plan as modified.

## ORDER

**BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED THAT:**

**Confirmation of Plan.**

The Plan is **APPROVED** and **CONFIRMED** under the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, including without limitation pursuant to § 943(b) of the Bankruptcy Code. The Plan is valid and enforceable pursuant to its terms and the terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

**Objections.**

With respect to the filed objections to confirmation of the Plan, the only objections which remained at the conclusion of the Confirmation Hearing was the objection of GE. With respect to the objection filed by GE, the Court has considered each objection raised therein and the Debtor's responses thereto including at the Confirmation Hearing. The Bankruptcy Court hereby overrules the objections in the GE's objection, and as set forth more fully herein, finds that the Plan satisfies the elements of the Bankruptcy Code as set forth above, including § 943(b), and should be confirmed.

As to the other filed objections:

a. The objection of HHS has been previously discussed in this Order as being resolved by the Modification.

b.   The objection of the Committee was withdrawn at the Confirmation Hearing.

**Findings of Fact and Conclusions of Law.**

The findings of fact and the conclusions of law stated in this Confirmation Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to the proceeding by Bankruptcy Rule 9014. All findings of fact and conclusions of law announced by this Bankruptcy Court on the record in connection with Confirmation of the Plan or otherwise at the Confirmation Hearing are incorporated herein by reference. To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.  To the extent that any of the findings of fact or conclusions of law constitutes an order of this Bankruptcy Court, they are adopted as such.

**Approval of Plan Documents.**

Upon the Effective Date, all actions contemplated by or in furtherance of the Plan shall be deemed authorized and approved in all respects.

The terms of the Plan and exhibits thereto are incorporated by reference into, and are an integral part of, the Confirmation Order. The form and substance of the Plan (and exhibits thereto), along with such further provisions as are provided herein, are confirmed and approved in each and every respect pursuant to § 943 of the Bankruptcy Code.  Except as may be set forth in the Plan, the Debtor is authorized and empowered to make any and all modifications to any and all documents included as part of the Plan that may be agreed to by the parties thereto and that are consistent with and in furtherance of the terms of the Plan and the terms of this Confirmation Order.

**Authority.**

The Debtor and its respective directors, officers, managers, agents, representatives, and attorneys, are authorized and empowered to (a) issue, execute, deliver, file and record, as appropriate, any contracts, instruments, releases, indentures, bills of sale, assignments, leases or other agreements or documents and (b) perform such other acts and execute and deliver such other documents as are required by, consistent with and necessary or appropriate to implement, effectuate or consummate the Plan and this Confirmation Order and the transactions contemplated thereby and hereby, all without the requirement of further application to, or order of, the Bankruptcy Court.

**Injunctions and Releases.**

Subject to the occurrence of the Effective Date and pursuant to applicable law and § 944 of the Bankruptcy Code, the discharge of the Debtor and any of its assets or properties, the releases, the injunction provisions and the exculpation provisions each as provided in Article X of the Plan, are (a) deemed incorporated in this Confirmation Order as if set forth in full herein, (b) hereby approved and authorized in their entirety as an integral part of the Plan and (c) hereby deemed and held to be fair, equitable, reasonable and in the best interests of the Debtor and its creditors. Except as otherwise specifically provided in the Plan (and except as may be necessary to enforce the provisions of the Plan or remedy a breach of the Plan), this Confirmation Order acts as of the Effective Date as a full and complete discharge of all Claims against the Debtor, the post-Effective Date Debtor, or the post-Effective Date Debtor's assets of any nature whatsoever, including, without limitation, any liability of a kind specified in §§ 502(g), 502(h) or 502(i) of the Bankruptcy Code, that arose or have been asserted against the Debtor at any time

before the entry of the Confirmation Order or that arise from any pre-Confirmation conduct of

the Debtor whether or not the Claim(s) are known to or knowable by the holder of a Claim.

**Notice of Entry of the Confirmation Order.**

In accordance with Bankruptcy Rules 2002 and 3020(c), within ten business days of the

date of entry of the Confirmation Order, the Debtor shall serve the Notice of Entry of the

Confirmation Order ("Notice of Confirmation") by United States mail, first class postage

prepaid, by hand, or by overnight courier service to all parties having been served with the

Confirmation Hearing Notice; provided, however, that no notice or service of any kind shall be

required to be mailed or made upon any party to whom the Debtor mailed a Confirmation

Hearing Notice, but received such notice returned marked "undeliverable as addressed," "moved,

left no forwarding address" or "forwarding order expired," or similar reason, unless the Debtor

has been informed in writing by such party of their new address.  Mailing of the Notice of

Confirmation in the time and manner set forth in this paragraph shall be good and sufficient

notice under the particular circumstances and in accordance with the requirements of the

Bankruptcy Code, Bankruptcy Rules, and Local Bankruptcy Rules, including Bankruptcy Rules

2002 and 3020(c), and no other or further notice or publication is necessary.

The Notice of Confirmation shall have the effect of an order of the Bankruptcy Court,

shall constitute sufficient notice of the entry of the Confirmation Order to such filing and

recording officers, and shall be a recordable instrument notwithstanding any contrary provision

of applicable non-bankruptcy law.

**References to Plan Provisions.**

The failure specifically to include or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety.

**Applicable Non-Bankruptcy Law.**

Pursuant to Bankruptcy Code §§ 1123(a) and 944(a), the provisions of this Confirmation Order, the Plan or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.  Debtor is not otherwise prohibited by law from taking any action necessary to carry out the Plan as required by §943(b)(4).

**Governing Law.**

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of South Carolina, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction and implementation of the Plan, any agreements, documents, instruments or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control), and corporate governance matters.

**Effectiveness of All Actions.**

Except as set forth in the Plan, all actions authorized to be taken pursuant to the Plan or this Confirmation Order shall be effective on, prior to, or after the Effective Date pursuant to the Confirmation Order as applicable, without further application to, or order of, the Bankruptcy Court, further act or action under applicable law, regulation, order, or rule or vote, consent or

authorization, or further action by the respective officers, directors or members of the Debtor and with the effect that such actions had been taken with the consent and by unanimous action of such officers, directors or members. In addition to the authority to execute and deliver, adopt, assign and/or amend, as the case may be, the contracts, instruments, releases and other agreements specifically granted in this Confirmation Order, the Debtor is authorized, and empowered, without necessity of action of their respective officers, directors or members, to take any and all such actions as any of their executive officers may determine are necessary or appropriate to implement, effectuate, and consummate any and all documents and/or transactions contemplated by the Plan, and/or this Confirmation Order.

**Waiver of Stay of Bankruptcy Rule 6004(h) and 6006(d).**

Notwithstanding Rules 6004(h) and 6006(d) of the Bankruptcy Rules, the Confirmation Order shall be immediately effective, subject to the terms and conditions of the Plan. The Court finds cause to enter this order regarding the stay provided by Rules 6004 and 6006 and finds that the respective stays should not be applicable in this case based upon the showing at the confirmation hearing that the sale and the assumption, rejection, or assignment of unexpired leases and executory contracts should occur upon entry of this order, or as soon thereafter as is practical, given the financial constraints faced by Debtor and the need to expedite implementation of the Plan.

**Modification of the Plan Prior to Consummation.**

Subject to certain restrictions and requirements set forth in §§ 942 and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, after the Confirmation Date and prior to consummation of the Plan, the Debtor may: (a) amend or modify the Plan one or more times as may be necessary to carry out the purposes and effects of the Plan so long as such amendment(s) do not materially and adversely affect the treatment of any creditor or equity security holder under the

Plan and (b) institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or this Confirmation Order.  Entry of the Confirmation Order means that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to the Bankruptcy Code, including § 942, the Bankruptcy Rules, and the Local Bankruptcy Rules, and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

**Final Confirmation Order.**

This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.   Notwithstanding Rule 3020(e) of the Bankruptcy Rules, the Confirmation Order shall be immediately effective, subject to the terms and conditions of the Plan.

**Retention of Jurisdiction.**

This Bankruptcy Court's retention of jurisdiction as set forth in Article XIII of the Plan is approved. Such retention of jurisdiction does not affect the finality of this Confirmation Order. For the avoidance of doubt, the Bankruptcy Court shall retain jurisdiction over all pending matters.

**AND IT IS SO ORDERED.**

**FILED BY THE COURT**
**05/23/2012**



David R. Duncan
US Bankruptcy Judge
District of South Carolina

Entered: 05/23/2012